(66 Misc. Rep. 291.)

REMMERS v. BERBLING.

(Supreme Court, Special Term, Kings County.   February, 1910.)

1. SALES (§ 40*)—REPRESENTATIONS—CONSTRUCTION.

   A statement of the receipts from a bar and· restaurant, made in connection with a sale of the premises, refers to a business necessarily fluctuating, and is not an engagement that such receipts will continue under the purchaser's management.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 80;  Dec. Dig. § 40.*]

2. SALES (§ 126*)—RIGHT TO RESCIND—EVIDENCE.

   A purchaser of a saloon, who purchased after many visits, saw that the receipts were less than he expected, and attempted to sell the property, but decided to continue the business, and found that the receipts increased so that the business was no longer run at a loss.  *Held*, that four months after the sale and his continued possession.of the property he could not rescind the sale.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 313–317;  Dec. Dig. § 126.*]

Action by Heinrich Remmers against John R. Berbling for rescission of contract of sale.   Complaint dismissed.

W. D. Veeder (John L. Hill, of counsel), for plaintiff.
Morris Kamber (Lynn W. Thompson, of counsel), for defendant.

PUTNAM, J.   On December 8, 1908, plaintiff purchased from the defendant a café and restaurant, with the unexpired license having 10 months to run, at Nos. 8 and 10 Bridge street, borough of Manhattan, for $10,000, of which he paid $3,000 in cash, $6,000 by assigning a bond and second mortgage on premises at No. 357 Broadway, Brooklyn, and the balance of $1,000 in 20 notes of $50 each, becoming due monthly thereafter.   Possession was immediately given; and, five days later, plaintiff took an account of the stock and continued to operate the restaurant with the same manager, bartender, and other employés. The note falling due January 8th was paid, also the note maturing February 8th, and the note of March 8th.   On January 30, 1909, plaintiff became dissatisfied with·his purchase and asked defendant to buy the place back at a loss to plaintiff of $2,000, which Berbling, declined. There is evidence of some further discussion between them in February; but on March 23, 1909, plaintiff brought this suit to rescind the sale, on the ground of fraudulent statements made by and on behalf of defendant.   The complaint alleges two misrepresentations:   That the income and daily receipts of the café and restaurant were $100; and that the stock on hand was of the value of from $400 to $500.

The plaintiff had been in the restaurant business for 36 years, having retired from active trade about a year previously.   Intending to resume his former pursuit, he looked for advertisements and first saw one early in November, 1908.   As a result of this, he called at the café in question and then went to the defendant's house in Bay Ridge, where an interview took place about which there is some dispute.   There is conflicting evidence regarding the statements originally made by

Mr. Ahues, a real estate broker; and a card of his was produced, on which, over an erasure, he had these premises listed as "Receipts $100 per day," "stock $1,000." Inasmuch as plaintiff was merely directed by the broker to this café and thence went directly to the defendant in person, these preliminary statements from the broker as to receipts and amount of the stock were superseded by plaintiff's direct dealings with the defendant. Plaintiff now contends that, at this personal interview, defendant told him that the receipts averaged $100 per day; in his affidavit on the application for a preliminary injunction he stated "about" $100. The defendant says that he informed the plaintiff that the receipts varied, particularly on rainy days, and that they ran from $75 to $100 per day. Other newspaper advertisements were introduced in evidence by the plaintiff, and were stated to have been inserted by the manager of the defendant, and are not directly contradicted. In one on November 15th, the receipts were stated as $80 to $100 per day, and in another, on November 23d, as $90 to $100 per day. It does not appear that these particular advertisements were ever seen by plaintiff. This interview at defendant's house was in the presence of Clement·Lessing and his daughter, Matilda Lessing, who generally confirmed defendant's statement that the receipts of the business were then stated as from $75 to $80 per day, or $75 to $80 or $100 per day.

Considering that a bar and restaurant business widely varies, as the receipts fluctuate according to the wants and business of the occupants of the adjoining buildings, I find that the representation in dispute was not a positive one that the receipts averaged $100 per day, but mentioned $100 in connection with the sum of $75. This view is supported by the recollection of the witnesses present, and finds confirmation from the advertisements that appeared in the Staats Zeitung, emanating either from the defendant's manager or the brokers endeavoring to effect the sale. Before making the purchase, plaintiff had visited the café seven or eight times and had been afforded full opportunities to see the business and learn the actual trade then carried on. The cash register showing the receipts was open to him to examine, although it does not appear that he actually opened it to count its contents. It was further alleged, as a ground from which fraud could be inferred, that, on one of the occasions when plaintiff visited the premises by appointment with defendant, the manager, Mr. Huertel, had invited to the bar a large number of persons whose patronage was not paid for, and that this appearance of business was a simulated one designed to deceive the plaintiff. It appeared, however, without contradiction, that this was the birthday of Huertel, which was stated to the visitors. The defendant positively denied any knowledge on his part of any such show of business, or any authority or instructions in that regard to Huertel. As Huertel was present in court and was not called by either side, plaintiff's counsel urged that, had he been called, his testimony might have disclosed some evidence of fraud. Huertel, however, had continued in the employment of the plaintiff from December 8th, the date of sale, until February 6th following. No presumption, therefore, from not calling him, exists against the defendant, inasmuch as, having been two months in plaintiff's employ, he

might well be regarded as having become an adverse party. The omission to put him on the stand in the peculiar circumstances of the case seems to raise no presumption against either side. One as experienced as the plaintiff should not have been misled by such an occasional act of hospitality as is here described, especially as he had been visiting the restaurant from day to day for a long period. After this occasion, and before making his purchase, plaintiff went again to the café and observed that there was but little business at the bar, though considerable in the restaurant; yet, with this later knowledge, he proceeded to Mr. Berbling that same night and agreed on this purchase.

It is testified by the defendant that, when they visited the restaurant together, plaintiff looked into the storeroom, which was a small space under the sidewalk, and saw the boxes, but did not open the cases to ascertain their contents. The representation of stock was apparently made several days before the sale, during which time the stock would naturally be reduced by daily consumption. It does not appear that when, five days after the purchase, it was found that the stock amounted in value to less than $100, plaintiff ever made it a ground of any objection to the defendant. During the month of December or first part of January, plaintiff was also informed by the bartender, and by Mr. Corell, one of the customers, that this gathering at the bar on the birthday mentioned was not ordinary trade, but had been a gratuitous hospitality. Nevertheless, as above stated, Mr. Remmers continued his occupation, paid the notes as they fell due, maintained trade relations with the defendant in the purchase of liquors from him, and not until the 30th of January intimated a dissatisfaction with his bargain, when his grievance was not urged as now stated, but rather as a request to be permitted to sell back the place to Mr. Berbling, even at a loss.

For the purpose of indicating fraud, evidence was received that the gas ranges in the kitchen were not the property of the defendant, but were actually owned by the gas company and leased to the tenant at a rental of three dollars per year. While such evidence was not contradicted, this matter of the gas ranges apparently was not the subject of any complaint. It was obviously an error arising from a previous occupant of the premises, and in which no fraud appears.

The testimony falls short of establishing a case for the rescission of the contract. The representations made, in view of the knowledge and experience of the parties, were not calculated to deceive. So far as the evidence shows, they were a fairly reasonable statement of the business as it then existed. Neither was there any continuing promise in respect to the amount of the stock. The defendant's statement was apparently an approximation of the quantity on hand at the time it was made. This stock was reduced, not only by consumption before the sale, but during the four days from plaintiff's possession to his taking an account of the goods in the storeroom. The defendant's statement is not disproved that in November the receipts were $75 and $85 per day, running as high as $100 on a rainy day. Against this, plaintiff called Mr. Katela, the bartender, who also after the sale had remained in plaintiff's employ. Before the sale, his regular duties ex-

tended only to the bar receipts. He, however, did testify to a period of two weeks in the spring of 1908, while Huertel was sick, when he had charge of the entire receipts of bar and restaurant. At this period (probably seven or eight months before the sale) he said that the daily receipts ran about $60, $65, and $75, a day. Huertel, presumably, could have stated the daily receipts up to and at the period of these representations. As he was not called, the evidence is left with Mr. Berbling's statement of daily receipts uncontradicted.

Representations of rental of property are entitled to be relied on, as based on definite contracts (Lysney v. Selby, 2 Ld. Raym. 1118, 1120; Brown v. Castles, 11 Cush. [Mass.] 348, 350; Griffing v. Diller, 66 Hun, 633, 21 N. Y. Supp. 407); but a statement of the receipts from a bar and restaurant refers to a business necessarily fluctuating and uncertain, and is not an engagement that such receipts are to continue under the purchaser's management. When the plaintiff discovered a falling off in his receipts, some days as low as $60, followed by special occasions bringing in receipts of $130 and $160, he was disappointed and at first made some unsuccessful efforts to find a purchaser for the place. Apparently, he decided later to continue the business himself, so as to see if the receipts increased; and his testimony was that they had increased, so that, at the time of the trial, the café had ceased to run at a loss.

Contracts of this kind, entered into deliberately after many visits, with full opportunity for investigation, are not to be rescinded, especially four months after the sale and continued occupation of the property, when it becomes impossible to restore the parties to their original position. The contention that plaintiff could continue to conduct the business for several months after the sale, during which he was to investigate the possibilities of the business, is based upon an erroneous view of these representations. They were statements of present facts, not undertakings as to future business earnings. The truth or falsity of such statements depended on the conditions of the business when they were uttered, regardless of the trade contingencies to come. Had plaintiff intended more, he should have procured a continuing guaranty for the future earnings.

Whatever grievances plaintiff had as to the stock, the earnings, or respecting the show of patronage on Huertel's birthday, became known to him in December or early part of January. On discovery of the facts, he was bound to rescind promptly. His continued use and occupation of the property thereafter was an affirmance of the purchase. Hallahan v. Webber, 7 App. Div. 122, 40 N. Y. Supp. 103; Strong v. Strong, 102 N. Y. 69, 5 N. E. 799; Pryor v. Foster, 130 N. Y. 171, 29 N. E. 123.

The complaint is, therefore, dismissed, with costs.

Complaint dismissed.